Robert **FRANZESE** and Elizabeth **Franzese, as the Parents and Legal Guardians of Robert Franzese Jr., a Disabled Adult, Plaintiffs,**

v.

**UNITED HEALTH CARE/OXFORD, Defendant.**

14–cv–1902 (SJF)(AKT)

United States District Court, E.D. New York.

Signed January 5, 2017

Richard E. Fish, Duncan, Fish & Vogel, LLP., Smithtown, NY, for Plaintiffs.

John Thomas Seybert, Michael H. Bernstein, Matthew Paul Mazzola, Ryan C. Chapoteau, Sedgwick LLP, New York, NY, for Defendant.

## OPINION AND ORDER

FEUERSTEIN, District Judge:

Plaintiffs Robert Franzese and Elizabeth Franzese, as the parents and legal guardians of Robert Franzese Jr., a disabled adult (collectively, "Plaintiffs"), commenced this action against Defendant United Health Care/Oxford ("Defendant" or "Oxford") seeking to recover medical benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a). *See* Docket Entry ("DE") [1]. Presently before the Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56, which Plaintiffs oppose. DE [41], [41–21]. For the reasons set forth herein, Oxford's motion is granted in part and denied in part.

## I. BACKGROUND

### A. Factual Background [1]

#### 1. The Parties and Relevant Insurance Coverage

Plaintiff Robert Franzese Jr. ("Bobby") has suffered from a chronic lung disease known as Bronchopulmonary Dysplasia ("BPD") and multiple related conditions since birth. Pls.' 56.1 Stmt. ¶ 1. As a result of his condition, Bobby remained at the Stony Brook University Hospital for the first two (2) years of his life. *Id.* According to Plaintiffs, "only a very small number of physicians have ever treated the condition and many have never heard of it." Compl., DE [1], ¶ 14. Since leaving the hospital approximately thirty (30) years ago, Bobby has required and received in-home nursing care twenty-four (24) hours a day, seven (7) days a week. *Id.* at ¶ 18; *see also* Pls.' 56.1 Stmt. ¶ 1.

It is undisputed that Bobby is a covered dependent under a group health insurance policy that Defendant Oxford issued to non-party Motherly Love Home Care Services, Inc. ("Motherly Love") under group number ML19597 (the "Plan"). Pls.' 56.1 Stmt. ¶¶ 4–7. Plaintiffs Robert Franzese ("Robert") and Elizabeth Franzese ("Elizabeth") own Motherly Love, and are named beneficiaries under the Plan. *Id.* at ¶ 3. The Plan is governed by ERISA and incorporates, *inter alia*: (i) a Certificate of Coverage (the "Certificate"), which describes the benefits that are available to covered dependents under the Plan; and (ii) a Schedule of Benefits (the "Schedule of Benefits"), which describes the "copayments, deductibles, coinsurance, out-of-pocket maximums, preauthorization requirements, and other limits on covered services." *Id.* at ¶¶ 6, 8; *see also* Administrative Record ("Tr."), DE [41–2]–[41–8], at 1–15, 22, 31.

---

1. Unless otherwise noted, the facts are not in dispute and are drawn from Defendant's Rule 56.1 Statement ("Def.'s 56.1 Stmt."), DE [41–1]; Plaintiffs' Counter Rule 56.1 Statement ("Pls.' 56.1 Stmt."), DE [41–19]; the Declaration of Maryann Britto in Support of Defendant's Motion for Summary Judg-ment ("Britto Decl."), DE [41–2]; the Declaration of Michael H. Bernstein in Support of Defendant's Motion for Summary Judgment ("Bernstein Decl."), DE [41–9]; and the Affirmation of Richard E. Fish in Opposition to Defendant's Motion for Summary Judgment ("Fish Aff."), DE [41–20].

### 2. Terms of the Oxford Plan

The Certificate provides that Oxford "do[es] not cover services that are not listed in [the] Certificate as being covered," and that covered dependents "receive covered services ... only when the covered service is: medically necessary; provided by a participating provider for in-network coverage; listed as a covered service; not in excess of any benefit limitations described in the Schedule of Benefits ... ; and received while [the] Certificate is in force." Tr. 33, 79. Pursuant to the Certificate, "covered services" are the "medically necessary services paid for or arranged for [the member] by [Oxford] under the terms and conditions of [the] Certificate." *Id.* at 26. The Certificate further provides that certain covered services require "preauthorization," which is defined as a "decision by [Oxford] prior to [the member's] receipt of a covered service, procedure, treatment plan, device, or prescription drug that the covered service, treatment plan, device, or prescription drug is medically necessary." *Id.* at 30, 33. Oxford may base its decision of whether a covered service is medically necessary upon:

[the member's] medical records; [Oxford's] medical policies and clinical guidelines; medical opinions of a professional society, peer review committee or other groups of physicians; reports in peer-reviewed medical literature; reports and guidelines published by nationally-recognized health care organizations that include supporting scientific data; professional standards of safety and effectiveness, which are generally-recognized in the United States for diagnosis, care, or treatment; the opinion of health care professionals in the generally-recognized health specialty involved; and the opinion of the attending providers, which have credence but do not overrule contrary opinions.

*Id.* at 34.

Relevant for purposes of Plaintiffs' claims, "home health care" is a covered service under the Plan. *Id.* at 49, 50. The Certificate states:

We cover care provided in your home by a home health agency certified or licensed by the appropriate state agency. The care must be provided pursuant to your physician's written treatment plan and must be in lieu of hospitalization or confinement in a skilled nursing facility. Home care includes (i) part time or intermittent nursing care by or under the supervision of a registered professional nurse (RN), (ii) part-time or intermittent services of a home health aide, (iii) physical, occupational, or speech therapy provided by the home health agency, and (iv) medical supplies, drugs, and medications prescribed by a physician, and laboratory services by or on behalf of the home health agency to the extent such items would have been covered during a hospitalization or confinement in a skilled nursing facility.

*Id.* Coverage for home health care services requires preauthorization and is limited to forty (40) visits per calendar year. *Id.* at 50. The Certificate neither lists "private duty nursing" as a covered service nor specifically identifies private duty nursing as a policy exclusion. *Id.* at 57–59. However, pursuant to a Private Duty Nursing Clinical Policy (the "Private Duty Nursing Policy") applicable to "Oxford Commercial plan membership," private duty nursing "is a benefit exclusion unless specifically noted otherwise ...." *Id.* at 367–72.

### 3. Plaintiffs' Preauthorization Request

On January 29, 2014, Elizabeth requested preauthorization for private duty nurs-

ing services for Bobby.[2] Pls.' 56.1 Stmt. ¶ 17. On January 30, 2014, Oxford requested additional clinical documentation from Motherly Love, including: (i) a letter of medical necessity; (ii) Bobby's plan of treatment, including the number of days and hours for which Motherly Love sought private duty nursing services; (iii) documentation related to Bobby's last doctor's visit; (iv) nursing notes documenting Bobby's four (4) most recent weeks of care and the most current supervisor's review; (v) a current Home Health Certification and Plan of Care; (vi) medical and treatment sheets; (vii) evidence of teaching provided to caregivers; (viii) identification of other medical and therapeutic disciplines providing services, including occupational therapists, physical therapists, speech therapists, social workers, and home health aides; and (ix) notes from Bobby's consulting physician and specialists, if any, with whom Bobby treated. *Id.* at ¶ 18. On February 6, 2014, Motherly Love submitted: (i) a January 30, 2014 letter from Dr. Richard Ancona summarizing Bobby's medical condition and treatment; (ii) a six (6)–month review of Motherly Love's medical orders for Bobby; and (iii) Motherly Love's Care Plan for Bobby (the "Care Plan"). *Id.* at ¶ 20.

In his January 30, 2014 letter, Dr. Ancona wrote that Bobby was "a 32–year-old male who has chronic lung disease as a result of severe Bronchopulmonary Dysplasia," and that Bobby's condition "will be present for an indefinite period of time, possibly for life." Tr. 233. Dr. Ancona further wrote that Bobby's condition "needs to be monitored continuously," and that:

[v]ital signs and assessments must be made . . . every 3 hours. Chest auscultation and respiratory assessment must also be made every 3 to 4 hours. Administration of medication as ordered and cardiac assessment must also be made every 3 to 4 hours, chest P.T. and postural drainage is ordered every 3 hours.

*Id.* at 234. According to Dr. Ancona, Bobby's "delicate pulmonary condition will require his registered nurses to accompany him at all times due to his continuous problems." *Id.* Dr. Ancona further wrote that it was "absolutely necessary that [Bobby] have skilled 24 hour registered nursing care provided by nurses knowledgeable about respiratory treatment in young adults as well as tracheotomy care." *Id.* at 235. According to Dr. Ancona, "without this present setup [Bobby] would become a permanent hospital resident at a tremendous peril to his life with further multiple infections and complications at a tremendous cost." *Id.*

### 4. Preauthorization Denial and Appeal

On February 6, 2014, Oxford Medical Director Dr. Catherine M. Crall determined that Motherly Love's preauthorization request should be denied because private duty nursing was not a covered service under the Plan. Pls.' 56.1 Stmt. ¶¶ 21–24. According to Oxford, in determining that private duty nursing was not a covered service, "Dr. Crall referenced the private or special duty nursing provision as well as the Exclusions and Limitations section of the plan."[3] *Id.* at ¶ 22. In a February 7, 2014 letter to Plaintiffs, Defendant wrote:

---

**2.** As Elizabeth requested preauthorization via telephone, the exact nature of her request is unclear. *See* Tr. 155. However, Plaintiffs do not dispute that Elizabeth sought preauthorization for private duty nursing services. *See* Pls.' 56.1 Stmt. ¶ 17.

**3.** The Court notes that the Exclusions and Limitations section relied upon and cited by Dr. Crall does not match the Exclusions section in Plaintiffs' Plan. *See* Tr. 78–80, 157.

After consideration of all available information, our Medical Director has determined that the requested procedure will not be covered for the following reason(s): Based on your NY Small benefits, coverage of Private Duty Nursing is denied. You have chronic respiratory disease. Private Duty Nursing is not covered by your benefit plan. Please discuss alternatives with your provider.

Tr. 257. Oxford informed Plaintiffs of their right to appeal the denial decision. *Id.* at 258–65. In a February 15, 2014 letter to Oxford, Elizabeth appealed "the decision to deny skilled nursing care to [her] son," writing that Bobby "has been receiving 24/7 Rn nursing care for the [past] 30 years," and that "[h]aving the nursing care has saved him from being hospitalized . . . ." *Id.* at 267. According to Elizabeth, "being maintained at home is more cost affect [*sic*] than being hospitalized." *Id.*

On February 18, 2014, Oxford assigned Plaintiffs' appeal to Oxford Medical Director Dr. Peter Stangel. Pls.' 56.1 Stmt. ¶ 27. In his Case Comments and Summary, Dr. Stangel wrote that Plaintiffs were "requesting approval of S9123 Nursing care, in the home[,] by registered nurse, per hour . . . and T1000 Private duty/independent nursing service(s)—licensed, up to 15 minutes." Tr. 274. Dr. Stangel further wrote that he "was unable to locate the [Certificate of Coverage] however per the initial denial [Plaintiffs] do[ ] not have private duty nursing included in their benefit plan." *Id.* at 274–75. In a February 27, 2014 letter to Plaintiffs, Oxford wrote that, in considering Plaintiffs' appeal, Dr. Stangel "carefully reviewed the documentation submitted, [Oxford's] payment policies and

the limitations, exclusions and other terms of [Plaintiffs'] Benefit Plan, including any applicable Riders, Amendments, and Notices." *Id.* at 276. Relying upon the Private Duty Nursing Policy,[4] Defendant wrote:

Your doctor has asked for coverage for continuation of your private duty nursing. We have reviewed your doctor's notes and your benefits. You have chronic lung disease and have a tracheostomy tube. Your care does not need to be done by nurses and is not considered skilled. So, the private duty nursing is not a covered benefit. The denial is upheld.

*Id.* According to Oxford, Section V of Plaintiffs' Plan provides that, "[u]nless coverage is specifically provided under this Certificate or provided under a rider or attachment to this Certificate, the following services and benefits are not Covered . . . 31. Private or special duty nursing."[5] *Id.* at 277. Defendant wrote that its "administrative decision to deny coverage for this service(s) is therefore unchanged," and informed Plaintiffs of their right to receive a copy of the administrative record and to commence a civil action pursuant to 29 U.S.C. § 1132(a). *Id.* at 277; Pls.' 56.1 Stmt. ¶ 36.

## B. Procedural Background

By way of a March 25, 2014 Complaint, Plaintiffs commenced this action against Oxford, alleging, *inter alia*, that Oxford breached the terms of the Plan by refusing to pay for medically necessary nursing services. Compl. ¶¶ 32–46. According to Plaintiffs, "it is clear that in spite of the clear and necessary nursing care required by

---

4. In Oxford's February 27, 2014 letter to Plaintiffs, Oxford wrote that the policy used in Dr. Stangel's determination was "Home 003.11.T2," which refers to the Private Duty Nursing Policy. *See* Tr. 276, 367.

5. Although Dr. Stangel relied upon a different coverage exclusion than the coverage exclusion upon which Dr. Crall relied, the exclusion upon which Dr. Stangel relied is also absent from Plaintiffs' Plan. Tr. 277.

[Bobby], and the fact that he has received over 30 years, as well as the documentation concerning his limited functioning due to his BPD, Defendant and its alleged expert, failed to observe or review considerable documentation." *Id.* at ¶ 26. Accordingly, Plaintiffs allege that Oxford's determination that private duty nursing was not a covered service under the Plan was arbitrary and capricious. *Id.* at ¶ 41. Plaintiffs also seek to recover attorneys' fees and costs pursuant to ERISA. *Id.* at ¶ 46.

On October 16, 2015, Defendant filed the instant motion for summary judgment pursuant to Fed. R. Civ. P. 56. DE [41]. According to Oxford, its denial of Plaintiffs' claim for private duty nursing benefits was not arbitrary and capricious because: (i) "the Plan does not provide benefits for private duty nursing"; and (ii) even if private duty nursing was a covered service under the Plan, the services Plaintiffs sought would still not be covered "because [they] were not considered skilled care and/or were custodial in nature." *See* Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Def.'s Mem."), DE [41-18], at 1. In opposition, Plaintiffs argue, *inter alia*, that "the Administrative Record contains absolutely nothing to suggest that either of Defendant's Oxford Medical Directors reviewed ... Bobby's lengthy medical record, spoke with Bobby's treating physician, Dr. Ancona, sought an examination of Bobby, or, in any way did anything more than a perfunctory review of papers." *See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Opp'n"), DE [41-21], at 8. Plaintiffs further argue that, "[a]t the very least, [the] Court should conclude that [they] are entitled to receive compensation for the Home Health Care services that Defendant admits are covered

under the express terms of the Plaintiffs' Plan." *Id.*

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no material facts that preclude judgment as a matter of law. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F.Supp.3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

## III. DISCUSSION

According to Plaintiffs, Defendant's denial of coverage for private duty nursing services was arbitrary and capricious. Compl. ¶¶ 32–44. For the reasons set forth herein, Oxford is not required to provide coverage for twenty-four (24) hour a day, seven (7) day a week private duty nursing services. However, insofar as Defendant claims that Plaintiffs are not entitled to coverage for home health care services because Motherly Love did not perform skilled services, Oxford's determination was arbitrary and capricious as it was not supported by substantial evidence.

### A. ERISA Standard of Review

■■■ Pursuant to 29 U.S.C. § 1132, a participant or beneficiary of a benefit plan governed by ERISA may bring a civil action "to recover benefits to due to him under the terms of his plan . . . ." 29 U.S.C. § 1132(a)(1)(B). A denial of ERISA benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Where a plan administrator or fiduciary has discretion to determine eligibility for benefits, "the benefits decision is reviewed under the arbitrary and capricious standard." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (citing *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)); *see also Nelson v. Unum Life Ins. Co. of Am.*, 421 F.Supp.2d 558, 566 (E.D.N.Y. 2006) ("If the administrator does have such discretion under the plan, a court may reverse the administrator's decision only if it is arbitrary and capricious."). The district court's "review under the arbitrary and capricious standard is limited to the administrative record." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995); *see also Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003) (observing that "the scope of judicial review is narrow" under the arbitrary and capricious standard).

■■■ A decision is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995); *see also O'Shea v. First Manhattan Co. Thrift Plan & Tr.*, 55 F.3d 109, 112 (2d Cir. 1995) ("[W]here [the administrator] of a plan impose[s] a standard not required by the plan's provisions, or interpret[s] the plan in a manner inconsistent with its plain words, or by [its] interpretation render[s] some provisions of the plan superfluous, [its] actions may well be found to be arbitrary and capricious."). The Second Circuit has held that "[s]ubstantial evidence is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance.'" *Celardo*, 318 F.3d at 146 (quoting *Miller*, 72 F.3d at 1072). Furthermore, "[i]n applying the arbitrary and capricious standard . . . a court must weigh as a relevant factor whether an insurer operates under an inherent conflict of interest, by both administering a plan and paying benefits out of its own funds." *Zuckerbrod v. Phoenix Mut. Life*

*Ins. Co.*, 78 F.3d 46, 49 (2d Cir. 1996). However, even where an insurer operates under a conflict of interest, "there is no change in the standard of review from deferential to *de novo*." *Stern v. Oxford Health Plans, Inc.*, No. 12-CV-2379, 2013 WL 3762898, at \*6 (E.D.N.Y. July 17, 2013) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–16, 128 S.Ct. 2343, 2350, 171 L.Ed.2d 299 (2008)). Rather, the court "must take [the conflict] into account and weigh [it] as a factor in determining whether there was an abuse of discretion . . . ." *McCauley v. First UNUM Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008). Moreover, "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010).

█ Pursuant to the Plan, Oxford "may develop or adopt standards that describe in more detail when [it] will make or will not make payments under [the] Certificate," including, *inter alia*, standards to determine "whether certain services are skilled care." Tr. 107. As the parties do not dispute that this language affords Oxford adequate discretion to warrant application of the arbitrary and capricious standard, *see* Pls.' Opp'n at 7, the Court must determine whether Oxford's denial of benefits was supported by substantial evidence in the administrative record. *See Igoe v. 1199 SEIU Health Care Emps. Pension Fund*, No. 12 Civ. 6308, 2013 WL 3467028, at \*3 (S.D.N.Y. July 10, 2013) (applying the arbitrary and capricious standard where the parties did not dispute its application).

### B. Private Duty Nursing is Not a Covered Service

█ It is axiomatic that an insurer "need only provide those services promised in its contract provisions." *Fay*, 287 F.3d at 104. Therefore, even where certain care is "medically necessary," an insurer is under no obligation to provide coverage for services not included as covered services in an insurance policy. *Id.* (upholding an insurer's denial of reimbursement for twenty-four (24) hour private duty nursing in the plaintiff's home, "even if such care was medically necessary," because the terms of the insurance policy did not provide for such coverage); *see also Stern*, 2013 WL 3762898, at \*8 ("An insurance company's denial of benefits is supported by substantial evidence when a plan explicitly bars coverage for that benefit."); *Pesca v. Bd. of Trs., Mason Tenders' Dist. Council Pension Fund*, 879 F.Supp. 23, 25 (S.D.N.Y. 1995) (holding that the denial of benefits was not arbitrary and capricious because the plan administrator "applied the plain letter of the Plan documents").

█ Oxford's denial of twenty-four (24) hour a day, seven (7) day a week private duty nursing services was not arbitrary and capricious. The Plan states that Oxford "do[es] not cover services that are not listed in [the] Certificate as being covered," and no Plan provision obligates Oxford to provide coverage for twenty-four (24) hour a day, seven (7) day a week private duty nursing service. *See* Tr. 79. To the contrary, the Private Duty Nursing Policy states that private duty nursing "is a benefit *exclusion* unless specifically noted otherwise in this policy." *Id.* at 371 (emphasis added). In denying Plaintiffs' request for private duty nursing services, both Dr. Crall and Dr. Stangel observed that "private duty nursing is not a covered benefit," and Oxford informed Plaintiffs that its denial was based on the fact that the Plan did not provide coverage for private duty nursing services.[6] *Id.* at 257, 276.

---

**6.** Although the Plan provisions upon which both Dr. Crall and Dr. Stangel rely do not

As Defendant's denial of private duty nursing services was supported by a plain reading of the Plan, it was not arbitrary and capricious. *See Van Hoven v. 1199 SEIU Pension & Benefit Funds*, No. 11 Civ. 3197, 2012 WL 488704, at *4 (S.D.N.Y. Feb. 15, 2012) (upholding the defendant's denial of benefits where "[t]he decision was supported by a plain reading of the Plan's terms ..."); *Olabopo v. 1199 SEIU*, No. 10-CV-1317, 2011 WL 1204749, at *3 (E.D.N.Y. Mar. 29, 2011) ("Because the Fund applied the plain letter reading of the Plan Documents, its decision is not arbitrary or capricious.").

Relying upon *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133 (2d Cir. 2010), Plaintiffs argue that a "conflict of interest exists here as Oxford both insures benefits under the Plan and administers claims for Plan benefits." Pls.' Opp'n at 8. However, as the plain language of the Plan establishes that the service for which Plaintiffs sought coverage is not is not a covered service under the Plan, any alleged conflict of interest need not be considered as it does not affect Plaintiffs' ability to recover for twenty-four (24) hour a day, seven (7) day a week private duty nursing. *See Van Hoven*, 2012 WL 488704, at *4 (holding that there was no conflict of interest where the insurance plan did not provide coverage for the services sought); *see also Durakovic*, 609 F.3d at 139–40 (holding that a conflict of interest that did not affect the administrator's decision was to be afforded no weight). Plaintiffs' argument that Oxford's denial of "in-home nursing services in direct contradiction to Bobby's record of 30 years of receiving medically necessary 24/7 nursing care ... was ... an arbitrary and capricious decision based on a very limited review of a

woefully inadequate 'administrative record,'" *see* Pls.' Opp'n at 8, is similarly unavailing, as Oxford was under no obligation to provide coverage for services not included in the Plan as covered services "even if such care is determined to be medically necessary." *Fay*, 287 F.3d at 103; *see also Krauss v. Oxford Health Plans, Inc.*, 418 F.Supp.2d 416, 433 (S.D.N.Y. 2005) ("[K]nowing that someone will require private duty nursing does not impose a duty [on an insurer] to *pay* for such care.") (emphasis in original).

Based upon the foregoing, Oxford's denial of twenty-four (24) hour a day, seven (7) day a week private duty nursing services was not arbitrary and capricious, and Defendant's motion for summary judgment is granted insofar as Plaintiffs seek to recover benefits for private duty nursing services.

## C. Whether Plaintiffs are Entitled to Recover Home Health Care Benefits

Although Plaintiffs are not entitled to recover benefits for private duty nursing services, they further argue that they are, "[a]t the very least, ... entitled to receive compensation for the Home Health Care services that Defendant admits are covered under the express terms of the Plaintiffs' Plan." Pls.' Opp'n at 8. According to Oxford, "[t]here is no dispute that Plaintiffs ... were seeking precertification for private duty nursing services," and "[b]ecause Plaintiffs sought coverage for around-the-clock nursing care, Oxford analyzed their claim as one for private duty in-home nursing services." *See* Def.'s Mem. at 12; *see also* Defendant's Reply Memorandum of Law in Further Support of its Motion for Summary Judgment

actual appear in the Plan, *see* Tr. 157, 277, the Court has reviewed the Plan in its entirety and concludes that no covered service identi-

fied therein requires that Oxford provide coverage for twenty-four (24) hour a day, seven (7) day a week private duty nursing services.

("Def.'s Reply Mem."), DE [41–22], at 1. However, in Dr. Crall's Medical Director Review Report and Dr. Stangel's Case Comments and Summary, Dr. Crall and Dr. Stangel classified Plaintiffs' request as arising under both service code S9123, which appears in an Oxford Home Health Care Clinical Policy (the "Home Health Care Policy") and pertains to home health care services, and service code T1000, which appears in the Private Duty Nursing Policy and pertains to private duty nursing services. Tr. 160, 257, 274, 371, 380. Similarly, in response to Motherly Love's January 29, 2014 preauthorization request, Oxford acknowledged that the Plan provides coverage for home health care services in certain internal Individual Authorization Report notes. *Id.* at 153, 155. Therefore, and because a conflict of interest could reasonably influence Oxford's decision to treat Plaintiffs' request as a request for private duty nursing instead of home health care services,[7] the Court also considers whether Oxford's denial of home health care benefits was supported by substantial evidence in the administrative record. *See Juliano v. Health Maint. Org. of New Jersey*, 221 F.3d 279, 291–92 (2d Cir. 2000) (holding that the plaintiff was entitled to benefits for home health care services despite determining that the plaintiff was not entitled to recover benefits for private duty nursing services).

With respect to coverage for home health care services, the Plan states:

We cover care provided in your home by a home health agency certified or licensed by the appropriate state agency. The care must be provided pursuant to your physician's written treatment plan and must be in lieu of hospitalization or confinement in a skilled nursing facility. Home care includes (i) part-time or intermittent nursing care by or under the supervision of a registered professional nurse (RN), (ii) part-time or intermittent services of a home health aide, (iii) physical, occupational, or speech therapy provided by the home health agency, and (iv) medical supplies, drugs, and medications prescribed by a physician, and laboratory services by or on behalf of the home health agency to the extent such items would have been covered during a hospitalization or confinement in a skilled nursing facility.

Tr. 49–50. The Home Health Care Policy further provides that coverage for home health care services is "available only for services that are skilled care services." *Id.* at 374. To be considered a "skilled service," the service must: (i) "be delivered or supervised by licensed technical or professional medical personnel in order to obtain the specified medical outcome"; (ii) be "ordered by a physician"; (iii) not be delivered "for the purpose of assisting with activities of daily living"; (iv) require "clinical training in order to be delivered safely and effectively"; and (v) not be custodial in nature. *Id.* The Home Health Care Policy further specifies that skilled care requires "the skills of qualified technical or professional health personnel such as registered nurses, licensed practical (vocational) nurses, physical therapists, occupational therapists, and speech-language pathologists or audiologists." *Id.* at 378.

To the extent that Plaintiffs' request is construed as a request for home health

---

7. Although the alleged conflict of interest does not affect Plaintiffs' ability to recover for twenty-four (24) hour a day, seven (7) day a week private duty nursing benefits for the reasons discussed herein, any such conflict may be relevant in Oxford's decision to treat Plaintiffs' preauthorization request exclusively as a request for private duty nursing, which is not a covered service under the Plan, as opposed to a request for home health care, which is a covered service under the Plan.

care services, Oxford's denial was not supported by substantial evidence in the administrative record, and was therefore arbitrary and capricious. Although Dr. Crall acknowledged that Plaintiffs' request sought coverage for both home health care services and private duty nursing services, she did not refer to home health care services in her denial of coverage rationale, and there is no evidence that she considered whether Plaintiffs were entitled to receive such coverage. *Id.* at 157–60. Similarly, Oxford made no reference to home health care services in its February 7, 2014 denial letter to Plaintiffs, and instead based its denial of coverage on the ground that "Private Duty Nursing is not covered by [Plaintiffs'] benefit plan." *Id.* at 257–66. In upholding Oxford's denial on appeal, Dr. Stangel wrote that Bobby has "chronic lung disease and [has] a tracheostomy tube," and concluded that Bobby's "care does not need to be done by nurses and is not considered skilled." *Id.* at 276. However, like Dr. Crall, Dr. Stangel made no reference to the Plan's coverage for home health care services, and there is no evidence that Dr. Stangel actually considered whether the requested services qualified as home health care services. *Id.* at 274–81. Rather, relying upon the Private Duty Nursing Policy and the Plan's coverage exclusions, Dr. Stangel concluded that "private duty nursing is not a covered benefit," and wrote that Oxford's "administrative decision to deny coverage for this service(s) is therefore unchanged." *Id.* at 276–77. As there is no indication that Oxford actually considered whether Plaintiffs were entitled to coverage for home health care services, the administrative record does not contain substantial evidence to support Defendant's denial of any such benefits. *See Perezaj v. Bldg. Serv. 32B–J Pension Fund*, No. 04-CV-3768, 2005 WL 1993392, at *4 (E.D.N.Y. Aug. 17, 2005) ("A fund's final decision may be found arbitrary and capricious where it is not 'based on a consideration of the relevant factors.'") (quoting *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1267 (2d Cir. 1995)).

In support of its motion for summary judgment, Oxford argues, *inter alia*, that it "considered whether any Plan term might conceivably provide coverage for Plaintiffs' claim." *See* Def.'s Mem. at 13–14. According to Defendant, "[i]n reaching his determination, Dr. Stangel appropriately considered and relied upon Oxford's coverage guidelines, the letter from Dr. Ancona, and the 'medical orders' and 'medical care plans' submitted by Motherly Love ...." *Id.* at 14. However, as discussed above, the administrative record is devoid of any evidence that either Dr. Crall or Dr. Stangel actually evaluated Plaintiffs' request as seeking coverage for home health care services, and Dr. Stangel actually wrote that he "was unable to locate the [Certificate of Coverage]," and that his conclusion that private duty nursing was not a covered benefit was based upon "the initial denial" of coverage. *Id.* at 274. Furthermore, Dr. Crall does not identify what, if any, medical records she reviewed in evaluating the nature of Bobby's care, and the section of Dr. Stangel's Member Case Summary titled "Chronology of Care/Medical Records Review" is blank. *Id.* at 157–60, 275. As Dr. Stangel's conclusory assertion that Bobby's care "does not need to be done by nurses and is not considered skilled," *id.* 276, is not supported by substantial evidence, Oxford's argument that "Dr. Stangel ultimately upheld Oxford's initial denial on the grounds that, even if private duty nursing was covered by the Plan, performance of the monitoring and intermittent suctioning allegedly required by [Bobby] was not a skilled nursing service as required for coverage under the Plan," *see* Def.'s Mem. at 14,

lacks merit.[8] *See Wiener v. Health Net of Connecticut, Inc.*, 311 Fed.Appx. 438, 441 (2d Cir. 2009) (holding that a conclusory assertion that treatment was not medically necessary was not supported by substantial evidence and was therefore arbitrary and capricious); *see also Manginaro v. Welfare Fund of Local 771*, 21 F.Supp.2d 284, 304 (S.D.N.Y. 1998) (holding that a denial of benefits was arbitrary and capricious where the documentation relied upon by a plan administrator did not provide substantial evidence for the administrator's "broad conclusions").

■ Relying upon *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201 (2d Cir. 2015), Defendant further argues that "a claim administrator may rely on the absence of evidence submitted by a claimant in reaching an adverse benefit determination." Def.'s Reply Mem. at 8. According to Oxford, Dr. Ancona's "only reference to the need for full-time nursing services" is that Bobby was "discharged home with 24 hour registered nursing care" from the Stony Brook University Hospital approximately thirty (30) years ago, and that Bobby "currently requires suctioning as per needed." *Id.* at 7–8. However, in his January 30, 2014 letter, Dr. Ancona wrote that Bobby's "delicate pulmonary condition will require his registered nurses to accompany him at all times due to his continuous problems," and that:

> [w]ith all the sophisticated and complicated equipment it is quite evident and absolutely necessary that [Bobby] have skilled 24 hour registered nursing care provided by nurses knowledgeable about

respiratory treatment in young adults as well as tracheotomy care. This level of nursing skill and care as well as the use of this equipment is solely responsible for allowing [Bobby] to remain at home for his medical care and has prevented further hospitalizations. I guarantee that without this present setup [Bobby] would become a permanent hospital resident at a tremendous peril to his life with further multiple infections and complications at a tremendous cost.

Tr. 234–35. Similarly, although Motherly Love's Care Plan for Bobby identifies various tasks and services in addition to "intermittent suctioning" that Motherly Love nurses perform to treat Bobby's various conditions, neither Dr. Crall nor Dr. Stangel addressed the Care Plan let alone considered whether any such tasks and services identified therein are "skilled services." *Id.* at 241–52. Moreover, contrary to Defendant's argument that "the administrative records was [*sic*] bereft of any evidence that might have explained why a 33–year-old Franzese could not simply have his intermittent suctioning services performed adequately by the parents (owners of Motherly Love) with whom he had lived with [*sic*] for 31 years," Def.'s Reply Mem. at 8, in his January 30, 2014 letter, Ancona wrote, "[n]o one can expect his parents or anyone else not trained, as are his nurses, to treat him at home." Tr. 235. Although it is well-settled that "plan administrators are not obliged to accord special deference to the opinions of treating physicians," *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123

---

**8.** Contrary to Defendant's argument that "Oxford's two board-certified Medical Directors reviewed every piece of information provided by Plaintiffs in support of their claim, as well as all documents ... incorporated by reference into Plaintiffs' Plan, in determining that the services at issue were not 'Medically Necessary,'" *see* Defs.' Reply Mem. at 6, neither

Dr. Crall nor Dr. Stangel addressed the medical necessity of the services that Plaintiffs requested. *See* Tr. 151–60, 273–81. Furthermore, as discussed herein, the administrative record does not support Defendants' argument that Dr. Crall and Dr. Stangel reviewed "every piece of information provided by Plaintiffs." *Id.* at 274–75.

S.Ct. 1965, 1967, 155 L.Ed.2d 1034 (2003), a plan administrator "may not arbitrarily refuse to credit reliable evidence, including the opinions of treating physicians." *Delprado v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 12-CV-673, 2015 WL 1780883, at *34 (N.D.N.Y. Apr. 20, 2015); *see also C.N.S., Inc. v. Connecticut Gen. Life Ins. Co.*, 9 F.Supp.2d 194, 198 (E.D.N.Y. 1998) (denying the defendant's motion for summary judgment where the parties presented "diverging characterization[s] of the medical testimony and facts supporting defendants' denial of benefits"). As there is no evidence that Defendant considered the full nature and extent of. Motherly Love's care for Bobby, or whether such care involved the provision of "skilled services," Oxford's decision to deny coverage for home health care services was not supported by substantial evidence.

Based upon the foregoing, to the extent that Plaintiffs' preauthorization request sought coverage for home health care benefits, Defendant's denial was arbitrary and capricious, and its motion for summary judgment is therefore denied.

### D. Medication Preauthorization Requirement

■ In the Complaint, Plaintiffs also allege that Oxford limited Bobby to one (1) box of the medication Xopenex at a time, and that the "onerous and irrational requirement to request a new authorization and delivery on a weekly basis, as opposed to monthly or quarterly, is clearly arbitrary and capricious and done to annoy and burden the Plaintiffs." Compl. ¶¶ 22–24. Although Plaintiffs do not specifically seek relief with respect to Oxford's weekly authorization requirement, *see id.* at ¶¶ 32–

46, in its motion for summary judgment, Defendant argues that "Plaintiffs do not allege that [Bobby] was ever denied use of, or coverage for, Xopenex." Def.'s Mem. at 17. In opposition, Plaintiffs neither acknowledge nor address Oxford's argument regarding authorization for Xopenex, and any claim related thereto is therefore deemed abandoned. *See Avola v. Louisiana–Pacific Corp.*, 991 F.Supp.2d 381, 390 (E.D.N.Y. 2013) ("Plaintiffs' failure to acknowledge, let alone address, the remaining five claims in opposing the Motion signals the abandonment of these claims."); *Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."). Therefore, to the extent that Plaintiffs seek relief arising out of Oxford's requirement that they obtain weekly authorization for Xopenex, Defendant's motion for summary judgment is granted.

### E. Appropriate Relief

■ Although Plaintiffs argue that the Court "should conclude that Plaintiffs are entitled to receive compensation for the Home Health Care services that Defendant admits are covered under the express terms of the Plaintiffs' Plan," *see* Pls.' Opp'n at 8, Second Circuit precedent "make[s] clear that even where [the court] conclude[s] a plan administrator's finding was arbitrary and capricious, [the court] will typically not substitute [its] own judgment, but rather will return the claim for reconsideration unless [it] 'conclude[s] that there is no possible evidence that could support a denial of benefits.' " [9] *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 490

---

**9.** Although Plaintiffs have not cross-moved for summary judgment, "the Court may search the record and grant summary judgment to either party whose claim has been proved or disproved." *4Kids Entm't, Inc. v. Upper Deck Co.*, 797 F.Supp.2d 236, 241 (S.D.N.Y. 2011).

(2d Cir. 2013) (quoting *Miller*, 72 F.3d at 1074). Therefore, despite the Court's conclusion that Oxford's denial of coverage for home health care services was arbitrary and capricious, remand is appropriate to allow Defendant to properly administer the Plan upon due consideration of all medical evidence and relevant Plan provisions. *See Manginaro*, 21 F.Supp.2d at 302 ("If a decision was arbitrary and capricious, the court should remand the matter to the fiduciary with instructions to consider additional evidence."). The Court declines to retain jurisdiction upon remand, but grants Plaintiffs leave to reopen this case, if necessary, to seek further relief without paying additional filing fees. *See Delprado*, 2015 WL 1780883, at *40 (declining to retain jurisdiction upon remand, but granting the plaintiff leave to reopen the action for further relief if necessary); *LeClair v. Liberty Life Assurance Co. of Boston*, No. 6:12-CV-6066, 2013 WL 3338685, at *4 (W.D.N.Y. July 2, 2013) ("The Court here declines to order the matter stayed and retain jurisdiction during the remand.").

## IV. CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment is granted in part and denied in part. Oxford's motion is granted insofar as Plaintiffs seek to recover for private duty nursing services and for Oxford's Xopenex preauthorization requirements. Oxford's motion is denied insofar as Plaintiffs seek to recover for home health care services. This action is remanded to Oxford for further consideration consistent with the instant Opinion and Order. Although the Court declines to retain jurisdiction upon remand, Plaintiff may move to reopen this action for further relief, if necessary, on ten (10) days' notice on or before March 10, 2017. The Clerk of Court is directed to close this case.

**SO ORDERED.**

