**UNITED STATES of America ex. rel. Alan SIEGEL, Plaintiff,**

v.

**ROCHE DIAGNOSTICS, CORP., Roche Holding, AG, Defendants.**

**No. 11–cv–5378 (ADS)(AKT).**

United States District Court, E.D. New York.

Dec. 30, 2013.

Raymond Nardo, Esq., Attorney for the Qui Tam Plaintiff Alan Siegel, Mineola, NY, Gibbons, P.C., Attorneys for the Defendant Roche Diagnostics, Corp. By: Lawrence S. Lustberg, Esq., Of Counsel, Newark, NJ.

## MEMORANDUM OF DECISION AND ORDER

ARTHUR D. SPATT, District Judge.

On November 2, 2011, the Relator Alan Siegel (the "Relator" or the "Plaintiff"), a former sales executive for the Defendant Roche Diagnostics Corporation ("Roche Diagnostics"), filed this *qui tam* action against Roche Diagnostics and its alleged alter ego, Roche Holding AG. ("Roche Holding"), pursuant to the Federal False Claims Act, 31 U.S.C. § 3729 (the "FCA").

On November 8, 2013, Roche Diagnostics, but not Roche Holding, moved to dismiss the complaint. Roche Holding has not yet appeared in this action. However, the Plaintiff has not sought to hold Roche Holding in default.

For the following reasons, the motion is granted.

## I. BACKGROUND

A. *Factual History*

Unless stated otherwise, the following facts are drawn from the complaint and construed in a light most favorable to the Plaintiff, the Relator.

The Plaintiff alleges that Roche Diagnostics manufactured and distributed a fluid testing machine known as the cobas6000. (Compl. ¶ 13.) Among other things, the cobas6000 tests for various bodily fluids and stores the resulting data on Compact Discs. According to the Plaintiff, the data is then used by the healthcare provider to bill Medicare, Medicaid, and private insurers. (Compl. ¶ 15.)

In Count I of the complaint, the Plaintiff alleges that, on about July 3, 2008, Pepe Cepeda, the Administrative Director of Laboratories for one of Roche Diagnostic's customers, North General Hospital, alerted Roche Diagnostics that the c501 module of the cobas6000 produced false positive results when testing for the presence of Phencyclidinie ("PCP"). At some point, a Roche Diagnostics representative informed Cepeda that the false positive issue was a "global problem." (Compl. ¶ 25.)

In Count II of the complaint, the Plaintiff alleges that, or about November 5, 2008, Cepeda alerted Roche Diagnostics that North General Hospital was billed for tests that it did not run with respect to its use of the cobas6000 e601 module. The Plaintiff alleges that "[e]ach time a medical

provider billed for Medicare and/or Medicaid for one of these inaccurate tests, it made a "claim" under the [False Claims Act]" for which Roche Diagnostics is liable. (Compl. ¶ 30.)

On January 29, 2009, the Plaintiff wrote to his superiors at Roche Diagnostics, advising them that that overbilling occurred "because of [a] glitch in the 601 software." (Compl. ¶ 37)

On June 9, 2009, Cepeda sent an email, apparently to a Roche Diagnostics representative, that North General's laboratory "was not in compliance with [Joint Commission on Accreditation of Healthcare Organizations] requirements because the date and time of the cobas printout does not accurately capture when the tests were performed." (Compl. ¶ 41)

The Plaintiff does not allege that Roche Diagnostics certified the accuracy of the Cumulative Operations List—a list of tests billed—or that it directed providers to use this list to generate its Medicare submissions, instead of a list of tests performed. (Compl. ¶ 38.) Nor does the Plaintiff refer to a single specific claim filed by any Roche Diagnostics customer for reimbursement from the federal government.

### B. *Procedural History*

On November 2, 2011, the Plaintiff filed this *qui tam* action under seal against Roche Diagnostics and Roche Holding pursuant to the provision of 31 U.S.C. § 3729 of the FCA. On March 19, 2013, the United States of America notified the Court of its decision not to intervene in this matter, at which point, the Court unsealed the complaint.

On November 8, 2013, Roche Diagnostics, but not Roche Holding, moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) for lack of subject matter jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. As noted above, Roche Holding has not yet appeared in this action. However, the Plaintiff has not sought to hold Roche Holding in default.

On December 9, 2013, the Plaintiff submitted a memorandum in opposition to the motion to dismiss which withdraws Count I of the complaint relating to the false-positive tests. In support of his memorandum in opposition to the motion to dismiss, the Plaintiff submits, for the first time, certain email correspondence between him and Roche Diagnostic representatives. However, the "Plaintiff may not amend his complaint through motion papers and the Court will not consider th[ese] newly raised [allegations]." *Willner ex rel. Willner v. Doar*, 12–CV–1955 (RRM)(RER), 2013 WL 4010205, at *5 (E.D.N.Y. Aug. 5, 2013); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998) (rejecting a new claim raised for the first time in plaintiff's opposition to a motion to dismiss). Accordingly, at this stage of the litigation, the Court declines to consider these submissions.

## II. DISCUSSION

### A. *Federal Rules of Civil Procedure 12(b)(6) and 9(b)*

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir.2009) (citation omitted). The complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A complaint that offers only " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' " therefore, " 'will not do.' " *Id.* (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Nor will a complaint that contains "naked assertion[s]' devoid of further 'factual enhancement.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

Further, as discussed in greater detail later, because FCA claims "fall within the express scope of Rule 9(b)," *Gold v. Morrison–Knudsen Co.,* 68 F.3d 1475, 1476–77 (2d Cir.1995), relators must "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b).

### B. *The False Claims Act*

■ "Pursuant to the FCA, private persons, known as 'relators,' may file qui tam actions and recover damages on behalf of the United States." *U.S. ex rel. Mooney v. Americare, Inc.,* 06–CV–1806 (FB)(VVP), 2013 WL 1346022, at *1 (E.D.N.Y. Apr. 3, 2013). Of relevance here, the FCA imposes liability upon any person who "knowingly presents, or causes to be presented, a false or fraudulent claim" to the Government or "knowingly makes, uses, or causes to be made or used, a false record or statement material" to such a claim. 31 U.S.C. § 3729(a)(1)(A); *id.* § 3729(a)(1)(B).

"As is apparent, some of the elements are common to both causes of action. In each case, there must have been a 'claim.' ... And the defendant must have known that the claim or statement was false or fraudulent." *U.S. ex rel. Pervez v. Beth Israel Med. Ctr.,* 736 F.Supp.2d 804, 811 (S.D.N.Y.2010).

### C. *The Fraud Enforcement Recovery Act*

The Fraud Enforcement Recovery Act of 2009 ("FERA"), Pub.L. No. 111–21, § 386, 123 Stat. 1617 (2009) amended and reunumbered provisions of the FCA, including the sections at issue in this case. Most of the amendments took effect on May 20, 2009. However, Section 4(f)(1) of FERA provided that the changes to 31 U.S.C. § 3729(a)(2) "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claim Act that are pending on or after that date." Prior to FERA, Section 3729(a)(2), now section 3729(a)(1)(b), established liability where a person "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."

Here, the Plaintiff fails to identify the provision of the FCA under which he seeks recovery or the dates on which purportedly "false" claims were submitted or "false" statements made. In any event, the FERA amendments are not relevant to the disputed issues in this motion.

### D. *The Patient Protection and Affordable Care Act ("PPACA")*

On March 23, 2010, President Obama signed into law the Patient Protection and Affordable Care Act ("PPACA"), provisions of which amended the FCA. As the Plaintiff filed his complaint in November 2011, the FCA, as amended by the PPACA, applies to his claims. *See Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.,* 10 CIV. 7504 RA, 966 F.Supp.2d 282, 293–94, 2013 WL 4441509, at *8 (S.D.N.Y. Aug. 16, 2013). The PPACA amended the FCA's public disclosure provision, codified at 31 U.S.C. § 3730(e)(4), in several key respects. *See* Pub.L. 111–148, § 10104(j)(2), 124 Stat. 119 (Mar. 23, 2010).

■ Prior to the PPACA's enactment, § 3730(e)(4) provided that "[n]o court [had] jurisdiction over an action" the alle-

gations of which had been previously publicly disclosed. A defendant invoking the public disclosure bar therefore challenged a court's subject matter jurisdiction. *See Rockwell Intern. Corp. v. U.S.,* 549 U.S. 457, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007). After the PPACA's enactment, § 3730(e)(4) provides that a "court shall dismiss an action or claim" when the provision applies. Absent a clear statutory statement to the contrary, the Court "holds that the public disclosure provision is no longer jurisdictional in nature, but rather provides a basis for dismissal [on the merits]." *Ping Chen ex rel. U.S.,* 966 F.Supp.2d at 294, 2013 WL 4441509, at *9.

■ In light of this ruling, the Court is not permitted, as it would be on a motion challenging its jurisdiction, to refer to evidence outside the pleadings, nor does the burden rest with Plaintiff. *See Hamm v. United States,* 483 F.3d 135, 137 (2d Cir. 2007) ("In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.") (quoting *Luckett v. Bure,* 290 F.3d 493, 496–97 (2d Cir.2002)).

### E. *The FCA's Public Disclosure Provision*

In its present form, the Public Disclosure provision of the FCA reads:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media,

> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

■ In this case, the Court finds that, while Roche Diagnostics may have been aware of the billing discrepancies, nothing in the parties' submissions suggests that the Plaintiff's *qui tam* complaint is based on prior public disclosures. For this reason, the Court need not address whether the Plaintiff qualified as the "original source of the information."

### F. *Failure to State a Claim*

#### 1. *False Claims and/or Statements*

Roche Diagnostic's principal argument is that the complaint should be dismissed for failure to plead the details of a specific false claim as required by Rule 9(b). Although "'the Second Circuit has not explained exactly what Rule 9(b) demands of FCA claims,' the weight of authority from district courts within this Circuit is that where an alleged FCA violation involves the submission of a false claim to the Government for reimbursement, the details of that false claim must be pled with particularity." *U.S. ex rel. Moore v. GlaxoSmithKline, LLC,* 06 CIV. 6047(BMC), 2013 WL 6085125, at *3 (E.D.N.Y. Oct. 18, 2013); *United States ex rel. Polansky v. Pfizer, Inc.,* No. 04–CV–0704 (ERK), 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) (concluding that the complaint must allege with particularity the "who, what, when, where and how of the alleged fraud") (quoting *Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997)).

■ In this case, the Complaint conclusorily states that "medical providers billed Medicare and Medicaid" for the purportedly inaccurate and/or unperformed tests for which those providers allegedly paid Roche. (Compl. ¶ 21). However, "there is nothing in the complaint alleging with particularity that a claim was submitted to the Government for reimbursement." *U.S. ex rel. Moore*, 2013 WL 6085125, at *5. "It is insufficient to allege that the submission of a false claim is merely conceivable or even likely." *Id.* Indeed, the Court finds that the Plaintiff has failed to allege details of either a specific claim for payment that was submitted to the Government by a medical provider or the specific details of an actual Medicaid/Medicare provider certification form signed by a particular provider.

To be sure, courts in other jurisdictions have held that a plaintiff need not plead the specifics of an actual claim under the FCA. *See e.g., United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009) (holding that a *qui tam* plaintiff need not allege the time, place, and contents of the false representation in every case, because requiring this level of detail is "one small step shy of requiring production of actual documentation with the complaint ...."); *United States ex rel. Underwood v. Genentech, Inc.*, 720 F.Supp.2d 671, 679–80 (E.D.Pa.2010) (holding that a relator who alleges that a third party submitted false claims to the government need not identify a particular false claim in his complaint); *United States ex rel. Schumann v. AstraZeneca PLC*, No. 03–5423, 2010 WL 4025904, at *9 (E.D.Pa. Oct. 13, 2010) (claims under the FCA "need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme") (quotation omitted).

However, courts in this Circuit have required a heightened standard with respect to pleading an actual claim under the FCA. *U.S. ex rel. Moore*, 2013 WL 6085125, at *5 ("A certification of eligibility or request for payment from the government, and the resulting potential damage to the public fisc, is an essential element of an FCA action, and cannot be adequately pleaded absent particularized allegations concerning the actual false claims submitted to the government."); *Morgan ex rel. U.S. v. Sci. Applications Int'l Corp.*, 07 CV 4612(GBD), 2008 WL 2566747, at *5 (S.D.N.Y. June 26, 2008)(granting motion to dismiss where the Plaintiff failed to "cite to a single identifiable record or billing submission that they claim to be false, or give a single example of when a purportedly false claim was presented for payment by a particular defendant at a specific time.").

■ The Court also acknowledges that the Second Circuit has held that Rule 9(b)'s pleading with particularity standards may be relaxed when "facts are peculiarly within the opposing party's knowledge." *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir.2008). However, here, while Roche Diagnostics may have known about the billing discrepancies, there is no reason to believe that it had any knowledge of false claims that were submitted by third-party medical providers. *See Polansky*, 2009 WL 1456582, at *8 (refusing to relax the pleading the standard in off-label *qui tam* against drug manufacturer because the needed information available was in the hands of third parties).

Finally, this is not a case "involv[ing] complex or extensive fraudulent schemes," in which "courts have 'relaxed' Rule 9(b)'s pleading requirements." *See U.S. ex rel. Taylor v. Gabelli*, 345 F.Supp.2d 313, 327 (S.D.N.Y.2004) (complex bid-rigging scheme). Here, the alleged fraud involved

billing for unperformed medical tests. The Court finds that the Plaintiff has failed to meet the requirement of Rule 9(b) and the Court finds that there is no basis for relaxing the pleading standard.

### 2. *Scienter*

In addition, the Complaint fails as a matter of law on the basis of scienter. To survive Roche Diagnostic's motion with respect to the Plaintiff's remaining FCA claim, the Plaintiff must sufficiently allege Roche Diagnostic's "knowledge" that the claim and/or statement at issue was false. For purposes of claims under the FCA, a person acts knowingly when he "has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). "No proof of specific intent to defraud" is required. *Id.*

 In this case, the Court finds that the Plaintiff fails to adequately plead that Roche Diagnostics was or should have been aware that providers were billing the government for tests that were not performed. *United States ex rel. Pervez,* 736 F.Supp.2d at 815 ("it seems particularly important here, where the allegedly culpable conduct at issue is at a somewhat greater remove, that the complaint describe adequately a plausible basis for attributing knowledge or deliberate ignorance to the party facing secondary liability"). The Court rejects as conclusory the Plaintiff's suggestion that "Roche knew of these issues, but let them linger for years." (Compl. ¶ 21.).

Finally, again, to the extent the Plaintiff invokes as a basis for scienter its exhibits submitted in connection with its opposition papers, the Court declines to consider this information. *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 526 (S.D.N.Y.1977) (a party may not amend a pleading through statements in briefs).

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Roche Diagnostic's motion to dismiss the complaint as against it is granted and the complaint as against it is dismissed without prejudice; and it is further

**ORDERED,** that, within ten days of the date of this order, the Plaintiff is directed to advise the Court whether it wishes to proceed against Roche Holding. Otherwise, the Court will dismiss the complaint as against Roche Holding for failure to prosecute.

**SO ORDERED.**