**OXFORD HEALTH INSURANCE, INC., Plaintiff,**

v.

**MOTHERLY LOVE HOME CARE SERVICES, INC., Robert Franzese, and Elizabeth Franzese, Defendants.**

15–cv–385 (SJF)(GRB)

United States District Court, E.D. New York.

Signed 02/27/2017

Michael H. Bernstein, Matthew Paul Mazzola, John Thomas Seybert Sedgwick LLP, New York, NY, for Plaintiff.

Richard E. Fish, Duncan, Fish & Vogel, LLP., Smithtown, NY,

## OPINION AND ORDER

FEUERSTEIN, District Judge:

Plaintiff Oxford Health Insurance, Inc. ("Plaintiff" or "Oxford") commenced this action against Defendants Motherly Love Home Care Services, Inc. ("Motherly Love"), Robert Franzese, and Elizabeth Franzese (collectively, "Defendants"), seeking declaratory relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq. See* Docket Entry ("DE") [1]. Presently before the Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, which Plaintiff opposes. DE [19]. For the reasons set forth herein, Defendants' motion is granted.

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, DE [1], and are accepted as true for purposes of the instant motion.

## A. Factual Background

### 1. The Parties and Relevant Insurance Coverage

Plaintiff Oxford is a licensed health insurance company, operating under the laws of the State of New York with a principal place of business in Trumbull, Connecticut. Compl. ¶ 1. Defendant Motherly Love is a New York corporation with a principal place of business in Centereach, New York. *Id.* at ¶ 2. Defendants Robert Franzese ("Robert") and Elizabeth Franzese ("Elizabeth," and with Robert, the "Franzeses") reside in Centereach, New York and are co-owners of Motherly Love. *Id.* at ¶¶ 3, 4.

Motherly Love completed Oxford's New York Small Group (2–50) Application (the "Application") for group health insurance coverage to commence on January 1, 2014. *Id.* at ¶ 7. The Application states, *inter alia,* "To be eligible for small group coverage, you must be located in a county where we offer this Oxford product and have at least 2 but not more than 50 eligible employees." *Id.* at ¶ 9. The Application defines an eligible employee as "[a]ctive permanent employees of the employer and of all subsidiaries or affiliates of a corporate employer who work 20 or more hours per week and are eligible for health benefits through the employer's group health plan." *Id.* at ¶ 10. In the Application, Motherly Love represented that it had three (3) eligible employees. *Id.* at ¶ 11. Based upon Motherly Love's Application, Oxford accepted coverage effective January 1, 2014. *Id.* at ¶ 13.

Pursuant to a Certificate of Coverage (the "Certificate"),[1] Motherly Love was required to "develop and maintain complete and accurate payroll records, as well

as any other records of the names, addresses, ages, and social security numbers of all group members covered under [the] Certificate, and any other information required to confirm their eligibility for coverage." *Id.* at ¶ 16. Motherly Love was required to provide such information to Oxford upon Oxford's request. *Id.* The Application further provides:

> The Applicant understands that this Application may be chosen for an audit to confirm the information provided. Audits may be conducted before or after enrollment. If documents reviewed or submitted during an audit show that the information provided on an application was false or that the group does not meet underwriting requirements, the group will not be enrolled (audit completed prior to enrollment) or will be terminated (audit completed post enrollment).

*Id.* at ¶ 12.

### 2. Oxford's Attempts to Verify Defendants' Eligibility

On October 1, 2014, "Oxford requested that [Motherly Love] verify its continued eligibility to participate in the New York Community Rated Small Group Coverage provided by Oxford."[2] *Id.* at ¶ 17. Oxford advised Motherly Love that "if the information was not provided to Oxford's satisfaction, coverage would not be renewed." *Id.* According to Oxford, Motherly Love "failed to provide all of the information requested." *Id.* at ¶ 18.

On October 21, 2014, Oxford requested: (i) "the first page of the [Internal Revenue Services' Form] 1120 along with the Schedule E, K, or G that identifies the owner(s) names, last 4 [digits] of their

---

1. The Application, Certificate, and other relevant insurance policy documents are referred to collectively herein as the "Plan."

2. Plaintiff does not specifically allege what information it sought in its October 1, 2014 letter to Motherly Love.

social security number and their division of ownership from 2013"; and (ii) the "job titles and descriptions and . . . the number of hours worked per week for Motherly Love . . . for Elizabeth Franzese, Robert Franzese [and] Frank Franzese." *Id.* at ¶ 19. In an October 24, 2014 letter in response, Motherly Love wrote, "[b]oth Robert Franzese (9726) and Elizabeth Franzese (8846) due to the nature of the business of pediatric home care work are on call 24 hours per day. Frank Franzese (8937) provides night and weekend 'on-call' services 8 hours per day." *Id.* at ¶ 20 (internal alteration omitted).

On November 21, 2014, Oxford requested that Motherly Love provide: (i) Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return Forms for the first three (3) quarters of 2014 indicating that Motherly Love reported its employees' wages to the state; and (ii) business records demonstrating that Motherly Love's employees "worked the required twenty hours per week on a continuous basis." *Id.* at ¶ 21. On November 26, 2014, Oxford received Motherly Love's NYS–45 Quarterly Tax Filings, which revealed that Frank Franzese "was not paid any wages in the first three quarters of the 2014 calendar year." *Id.* at ¶ 22. According to Oxford, Motherly Love "did not provide any additional information demonstrating that any of its claimed Eligible Employees worked twenty hours per week on a continuous basis." *Id.*

In a December 1, 2014 letter, Oxford informed Motherly Love that its coverage would be terminated effective December 31, 2014 because Motherly Love "had failed to meet its obligation to demonstrate that it qualified for group coverage under Oxford's NY Community–Rated Small Group Plan." *Id.* at ¶ 23. In its December 1, 2014 letter, Oxford wrote:

The Underwriting Requirements require at least one "eligible employee." An "eligible employee" cannot be an individual business owner or his/her spouse. Moreover, the "eligible employee" must be an active permanent employee of the employer working twenty (20) hours or more per week on a continuous basis. You have not provided any objectively verifiable information demonstrating that your company employs an "eligible employee."

*Id.* In a December 5, 2014 email to Oxford, Motherly Love "asserted that [its] broker had received confirmation that the policy would be renewed." *Id.* at ¶ 24.

On December 9, 2014, Oxford requested that Motherly Love provide: (i) a complete report of the hours that Robert and Elizabeth worked per week for the third quarter of 2014, and (ii) an explanation of Robert and Elizabeth's job descriptions. *Id.* at ¶ 25. In response, Motherly Love submitted a joint affidavit from Robert and Elizabeth in which they stated that they worked twenty-four (24) hours per day, seven (7) days per week. *Id.* at ¶ 26. Robert and Elizabeth wrote, "we do not get paid hourly nor do we keep time records for ourselves. Although there is a variation in what we pay ourselves, it is strictly related to cash flow from reimbursements, nursing payroll and other debts of the business, at any given time." *Id.* In a December 18, 2014 letter to Motherly Love, Oxford informed Motherly Love that its coverage would not be renewed because "[t]he information provided in [the] affidavit did not answer [Oxford's] outstanding questions." *Id.* at ¶ 27. In response, Robert and Elizabeth submitted another joint affidavit "providing some additional information and asserting that they were relying on the broker's representation that coverage was to be renewed." *Id.* at ¶ 28.

In a December 23, 2014 letter, Oxford "confirmed that [Motherly Love's] submission did not satisfy the requirements to demonstrate that [Motherly Love] was eligible to continue its coverage," writing, *inter alia*, "[b]ased on [the] recitation of duties performed by Robert and Elizabeth Franzese, there should be records substantiating their work done on behalf of Motherly Love." *Id.* at ¶ 29. Oxford further informed Motherly Love that the following records, "if provided, may be acceptable to ... substitute for the lack of contemporaneous time records":

> (1) copies of contracts with nurses; (2) copies of contracts with patients and/or clients; (3) communications with nurses for recruiting and scheduling of work; (4) schedules for nurses; (5) copies of claims submitted to insurance companies and responsive explanations of benefits from those companies; (6) copies of care plans and/or related communications with medical doctors; (7) copies of communications with "patients"; and (8) copies of communications with insurance companies disputing claims and payments.

*Id.* Motherly Love did not provide any of the records requested in Oxford's December 23, 2014 letter, but rather, submitted pictures of the Franzeses in their office. *Id.* at ¶ 30. According to Oxford, Motherly Love again "advised that it intended to rely on [its] broker's statements that the coverage would be renewed despite Oxford's statements to the contrary." *Id.* at ¶ 31.

In a final letter dated January 15, 2015, Oxford again informed Motherly Love that "the proof offered did not show that [Motherly Love] was eligible to participate in Oxford's New York Community–Rated Small Group Plan coverage and that it should provide any evidence it has to support its claim of eligibility." *Id.* at ¶ 32.

Motherly Love responded the same day, "again refus[ing] to provide any information and advis[ing] that it would seek to hold Oxford liable for any and all medical claims incurred by the enrollees in the [Motherly Love] health benefit plan arising after January 1, 2015." *Id.* at ¶ 33.

## B. Procedural Background

On January 23, 2015, Oxford commenced this action against Defendants seeking a declaratory judgment that "Oxford properly non-renewed the coverage afforded to [Motherly Love] for its group health plan effective January 1, 2015 and [that] Oxford is not required to provide coverage for the enrollees in the [Motherly Love] group health plan." *Id.* at ¶ 43. Oxford seeks: (i) to enjoin any act or practice which violates any provision of ERISA or the terms of the health benefit plan; and (ii) other appropriate equitable relief under ERISA to enforce the provisions of the health benefit plan. *Id.* at ¶¶ 41, 42. Although Oxford does not seek monetary damages, it seeks to recover attorneys' fees and costs pursuant to ERISA. *Id.* at ¶ 40.

On December 10, 2015, Defendants filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). DE [19]. Defendant argues, *inter alia*, that: (i) Oxford lacks standing because "[a] plan administrator has no standing under ERISA to bring an action for a declaration that it properly denied benefits"; (ii) Oxford fails to state a claim upon which relief may be granted; and (iii) declaratory relief is inappropriate where "the party seeking the declaratory judgment does not risk taking future undirected action." *See* Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint for Declaratory Relief ("Defs.' Mem."), DE [19], at 2. Defendants further argue that "Oxford inappropriately seeks declaratory relief in the form of a determi-

nation ... that actions it has already taken are proper rather than seeking direction from this Court prior to taking this action to deny coverage to the Defendants." *Id.* at 4. In opposition, Plaintiff argues, *inter alia*, that it "is not seeking a declaratory judgment sanctioning its denial of health benefits for the in-home nursing services the Franzeses' son allegedly incurred under the Plan in 2014." *See* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl.'s Opp'n."), DE [19–1], at 10. Rather, Oxford argues that it "is seeking a declaratory judgment that its decision not to renew the Plan was proper in light of Motherly Love's violations of the Plan and the complete and utter lack of evidence supporting eligibility and, as such, Oxford is not required to provide coverage to Defendants for the 2015 period." *Id.*

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1) Standard

■ An objection to a plaintiff's standing "is properly made on a Rule 12(b)(1) motion." *Tasini v. New York Times Co., Inc.*, 184 F.Supp.2d 350, 354 (S.D.N.Y. 2002); *see also City of New York v. Milhelm Attea & Bros., Inc.*, 550 F.Supp.2d 332, 340 (E.D.N.Y. 2008) ("As standing is a limitation on the authority of a federal court to exercise jurisdiction, it is properly addressed within the context of a Rule 12(b)(1) motion.") (internal quotation omitted). To survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research, L.L.C.*, 101 F.Supp.3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In deciding a Rule 12(b)(1) motion, the court "must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F.Supp.2d 443, 449 (S.D.N.Y. 2001). On a motion to dismiss for lack of subject matter jurisdiction, "the Court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question." *Forbes v. State Univ. of New York at Stony Brook*, 259 F.Supp.2d 227, 231–32 (E.D.N.Y. 2003). The party advocating for subject matter jurisdiction "must show by a preponderance of the evidence that subject matter jurisdiction exists." *Lifrak v. New York City Council*, 389 F.Supp.2d 500, 502 (S.D.N.Y. 2005).

### B. Fed. R. Civ. P. 12(b)(6) Standard

In order to survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F.Supp.2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)). In deciding a motion to dismiss pursuant to Fed. R. Civ.

P. 12(b)(6), the court's consideration is limited to:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated ... by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F.Supp.2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Messina v. Mazzeo*, 854 F.Supp. 116, 128 (E.D.N.Y. 1994) ("The court's consideration on a motion to dismiss is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.").

## III. DISCUSSION

In its Complaint, Oxford "seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) and 28 U.S.C. § 2201." Compl. ¶ 43. Therefore, the Court considers whether jurisdiction exists pursuant to either ERISA or the DJA. Applying the standards set forth above, and for the reasons set forth herein, Defendants' motion to dismiss is granted.

### A. Standing Under ERISA

█ The Supreme Court has held that the ERISA statute "strictly limits the 'universe of plaintiffs who may bring certain civil actions.'" *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005) (quoting *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247, 120 S.Ct. 2180, 2187, 147 L.Ed.2d 187 (2000)). It is well established that "courts are not to infer a grant of jurisdiction absent a clear legislative mandate." *Pressroom Unions–Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 892 (2d Cir. 1983). Relevant here, 29 U.S.C. § 1132 provides that a plan participant, beneficiary, or fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3); *see also Connecticut v. Physicians Health Servs. Of Connecticut, Inc.*, 287 F.3d 110, 122 (2d Cir. 2002) (holding that a plaintiff who was not a participant, beneficiary, or fiduciary of a benefit plan lacked standing to seek equitable relief pursuant to 29 U.S.C. § 1132(a)(3)). In contrast, an action to recover benefits due under the terms of a benefits plan, to enforce rights under the terms of a benefits plan, or to clarify rights to future benefits under the terms of a benefits plan may only be brought by a plan participant or beneficiary. 29 U.S.C. § 1132(a)(1)(B); *see also Managing Dirs.' Long Term Incentive Plan v. Boccella*, No. 14 Civ. 7033, 2015 WL 2130876, at *3 (S.D.N.Y. May 6, 2015) ("A fiduciary has the right to bring suit to enjoin violations or to obtain equitable relief in order to redress violations and enforce provisions of ERISA or the underlying plan, but not to clarify obligations under a plan."). Accordingly, courts in the Second Circuit have observed that, "[b]y its own terms, § 1132(a)(3) authorizes fiduciaries to seek equitable relief only." *Mem'l Hosp. for Cancer & Allied Diseases v. Empire Blue Cross & Blue Shield*, No. 93 Civ. 6682, 1994 WL 132151, at *5 (S.D.N.Y. Apr. 12, 1994).

■ As a fiduciary of the Plan,[3] Plaintiff lacks standing to pursue the relief it seeks in this action under 29 U.S.C. § 1132(a)(3). Although Plaintiff argues that it seeks equitable relief in the form of "a declaratory judgment that its decision not to renew the Plan was proper in light of Motherly Love's violations of the Plan and the complete and utter lack of evidence supporting eligibility," *see* Pl.'s Opp'n at 10, it is well established that "[a] declaratory judgment is not always a form of 'equitable' relief." *Connecticut Gen. Life Ins. Co. of New York v. Cole*, 821 F.Supp. 193, 197 (S.D.N.Y. 1993). Plaintiff's argument that it is "entitled to appropriate equitable relief" because "Defendants breached their fiduciary obligation, which was set forth in the Plan documents," *see* Pl.'s Opp'n at 13, lacks merit, as Plaintiff neither seeks to compel Defendants to comply with the terms of the Plan nor seeks to enjoin Defendants from committing future violations of the Plan. Rather, Oxford concedes that it seeks a declaration that it "properly non-renewed the coverage afforded to [Defendants] for [their] group health plan effective January 1, 2015 and [that] Oxford is *not required to provide coverage* for the enrollees in the [Motherly Love] group health plan." Compl. ¶ 43 (emphasis added). Courts in the Second Circuit have held that similar claims are legal in nature, and are therefore not properly brought by the fiduciary of an ERISA benefits plan. *See, e.g., Boccella*, 2015 WL 2130876, at *1 (holding that the fiduciary of a benefits plan lacked standing under ERISA where it sought a declaratory judgment "that [the defendant] ha[d] engaged in prohibited competition activity as defined in the Plan"); *Mem'l Hosp. for Cancer & Allied Diseases*, 1994 WL 132151, at *6 ("[C]ourts have consistently held that fiduciary insurers ... do not have standing under § 1132(a)(3) to seek clarification of their obligations under ERISA-governed contracts and that such suits are not actions to 'enforce' ERISA plan terms."); *Connecticut Gen. Life Ins. Co. of New York*, 821 F.Supp. at 197 (holding that the plaintiff's action was "brought solely to clarify their obligations as insurers" where the "underlying controversies ... [were the] defendants' contractual claims to benefits" under insurance policies); *see also Metro. Prop. & Cas. Ins. Co. v. Sisbarro*, No. 13-CV-537, 2015 WL 893328, at *5 (D. Conn. Mar. 2, 2015) (holding that an action to determine whether the defendant was insured was "a claim sounding not in equity but in law").

Relying upon *Powell v. Eustis Eng'g Co., Inc.*, No. Civ.A. 02-1259, 2003 WL 22533650 (E.D. La. Nov. 6, 2003) and *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809 (7th Cir. 1994), Plaintiff further argues that "ERISA imposes on employers the duty to maintain accurate employment records, and at least one court has enumerated this duty as a fiduciary one." Pl.'s Opp'n at 13. According to Oxford, Defendants breached their fiduciary duty to: (i) "maintain accurate records ... to establish the eligibility of the participants who were enrolled in the Plan"; and (ii) "accurately report to Oxford necessary information concerning the enrollees' eligibility to participate in the Plan." *Id.* at 12. Oxford argues that "[i]t is this breach of Defendants' fiduciary duties that form the basis for [this] lawsuit." *Id.* at 13. However, even accepting as true Plaintiff's contention that

---

3. The parties do not dispute that Oxford is a fiduciary of the Plan as defined by ERISA. *See* Defs.' Mem. at 6 ("Oxford is a fiduciary as defined by ERISA because it has discretionary authority or discretionary responsibility in the administration of the Motherly Love health benefit plan ...."); Pl.'s Opp'n at 12 ("Oxford has alleged facts supporting its status as a Plan 'fiduciary' under ERISA.").

Defendants owed *Oxford* a fiduciary duty under the Plan,[4] Plaintiff does not seek to compel Defendants to maintain accurate records or accurately report information concerning Defendants' eligibility to participate in the Plan. To the contrary, Plaintiff's allegations establish that Oxford terminated coverage under the Plan effective January 1, 2015, and it now seeks a declaration that it was justified in doing so, thus relieving Oxford of any further obligation to provide benefits under the Plan. *See* Compl. ¶ 42. As discussed above, such relief is legal in nature, and is therefore not properly sought by a fiduciary of an ERISA benefits plan. *See Mem'l Hosp. for Cancer & Allied Diseases*, 1994 WL 132151, at *5; *cf. Schultz v. Stoner*, 308 F.Supp.2d 289, 301–02 (S.D.N.Y. 2004) (holding that an action was equitable in nature, and therefore properly brought pursuant to 29 U.S.C. § 1132(a)(3), where the plaintiffs sought "broad-based corrective action" in how a fiduciary administered an ERISA benefits plan). As Plaintiff lacks standing under ERISA to pursue the relief it seeks in this instant action, this Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to 29 U.S.C. § 1132(a)(3).

## B. Jurisdiction Under the Declaratory Judgment Act

Although Plaintiff lacks standing under ERISA, the Second Circuit has observed that "[t]he Declaratory Judgment Act confers on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.' " *Peconic Baykeeper, Inc. v. Suffolk Cty.*, 600 F.3d 180, 187 (2d Cir. 2010) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995)). Pursuant to the DJA, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, the DJA does not "expand the subject matter jurisdiction of the federal courts." *Gelmart Indus., Inc. v. Eveready Battery Co., Inc.*, 120 F.Supp.3d 327, 330 (S.D.N.Y. 2014); *see also Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F.Supp.3d 675, 689 (S.D.N.Y. 2014) ("[I]t is well established that the DJA does not expand the jurisdiction of the federal courts, and a basis for subject matter jurisdiction other than the DJA must be found."). Relevant here, "federal jurisdiction in a declaratory judgment action exists if the defendant against whom the declaratory judgment is sought could have brought a coercive action in federal court to enforce his rights." *Connecticut Gen. Life Ins. Co. of New York*, 821 F.Supp. at 198; *see also Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1253 (9th Cir. 1987) ("[T]o ascertain the presence of federal jurisdiction in a declaratory judgment action, it is necessary to determine whether the defendant against

---

4. In contrast to the instant action, the case law upon which Plaintiff relies considers an employer's fiduciary duties to its employees, and not to the fiduciary of an ERISA benefits plan. *See Powell*, 2003 WL 22533650, at *1. Furthermore, although an employer is a " 'fiduciary with respect to a plan,' 'and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary responsibility in the administration' of the plan," *see Varity Corp. v. Howe*, 516 U.S. 489, 498, 116 S.Ct. 1065, 1071, 134 L.Ed.2d 130 (1996) (quoting 29 U.S.C. § 1002(21)(A)), Plaintiff has not alleged any facts that would support an inference that Motherly Love had adequate discretion or control in administration of the Plan to be considered a fiduciary thereof.

whom declaratory judgment is sought could have asserted his rights in a federal court."). Therefore, "[w]here a declaratory plaintiff asserts a claim of non-liability as to a defendant, 'a court must look beyond the declaratory judgment allegations and determine whether a substantial federal question arises either from the defendant's threatened action, … or from the complaint when viewed as a request for coercive relief apart from the defendant's anticipated suit.'" *N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters, AFL–CIO*, No. 04 Civ. 9949, 2005 WL 646350, at *8 (S.D.N.Y. Mar. 21, 2005) (quoting *W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 194 (2d Cir. 1987)).

 The DJA does not provide an independent basis for jurisdiction over Plaintiff's claims asserted in the instant action. According to Oxford, Defendants "refused to accept and acknowledge the non-renewal of coverage for the 2015 Plan year" and threatened "to file suit in state court to reinstate coverage." Pl.'s Opp'n at 14–15. Although Plaintiff argues that there is "an actual controversy between the parties that is fixed and final" such that a declaratory judgment "will clarify and settle the legal relations in issue and afford relief from the controversy giving rise to this action," *see id.* at 15, courts in the Second Circuit "permit ERISA suits, including declaratory judgment actions, only by plaintiffs specified in ERISA § 502(a) …." *Boccella*, 2015 WL 2130876, at *4 (quoting *Albradco, Inc. v. Bevona*, 982 F.2d 82, 85 (2d Cir. 1992)); *see also Metal Lathers Local 46 Pension Fund v. River Ave. Contracting Corp.*, 954 F.Supp.2d 250, 256 (S.D.N.Y. 2013) ("Section 502 of ERISA creates a federal right only as to the parties enumerated in the statute; by that logic, parties not included within the statute cannot bring ERISA claims in federal court under [28 U.S.C.] § 1331, as they

can assert no right arising under federal law."). In *Boccella*, the court held that the plaintiff, "as a fiduciary, [did] not have standing under ERISA to bring" an action "to clarify rights under a plan." 2015 WL 2130876, at *3. In concluding that the DJA did not provide an independent basis for jurisdiction over the plaintiff's claim, the court held that "[i]t logically follows that an enumerated plaintiff, attempting to sue under a provision which does not provide for standing, is not able to assert a right arising under federal law and therefore should not be able to invoke [28 U.S.C. § ] 1331." *Id.* at *4. The court further observed that, to allow such a declaratory judgment action to proceed "would render ERISA's strict jurisdictional rules toothless, because it would allow courts to exercise jurisdiction over cases brought by plaintiffs who have not been specifically enabled to sue under ERISA." *Id.*; *see also Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1524 (11th Cir. 1987) ("Congress did not intend ERISA fiduciaries to use declaratory judgment actions to determine the benefit rights of participants/beneficiaries."). As Oxford lacks standing to pursue its claims pursuant to ERISA, it may not invoke the DJA as an independent basis for this Court's jurisdiction. *See Boccella*, 2015 WL 2130876, at *3.

 Furthermore, even assuming the DJA provided an independent basis for jurisdiction over Plaintiff's claims, the DJA "confers *discretionary jurisdiction* upon federal courts rather than an absolute right upon the litigant invoking the remedy." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F.Supp.2d 394, 405 (S.D.N.Y. 2002) (emphasis added); *see also Wilton*, 515 U.S. at 287, 115 S.Ct. at 2143 (holding that the DJA "confers a discretion on the courts rather than an absolute right upon the litigant"); *Amusement Indus., Inc. v. Stern*, 693 F.Supp.2d 301, 311 (S.D.N.Y.

2010) (holding that even where a justiciable controversy exists, "a court must still decide whether it will exercise its discretion to entertain a request for declaratory judgment"). In determining whether to exercise discretionary jurisdiction under the DJA, courts consider:

(i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for a procedural fencing or a race to *res judicata*; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

*The New York Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (quoting *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003) (internal quotation marks omitted)). The court must "examine the situation in its entirety," *Fleisher v. Phoenix Life Ins. Co.*, 858 F.Supp.2d 290, 301 (S.D.N.Y. 2012), and may consider "equitable, prudential, and policy arguments." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136, 127 S.Ct. 764, 777, 166 L.Ed.2d 604 (2007). Although Oxford alleges that Defendants' anticipated action "would seek to hold Oxford liable for any and all medical claims incurred by [Defendants] . . . arising after January 1, 2015," *see* Compl. ¶ 33, Defendants argue that their anticipated action involves "[p]otential claims against Oxford for fraud and fraudulent inducement . . .

for its failure to abide by the assurances made to Motherly Love prior to enrolling in the group health plan . . . ." Defs.' Mem. at 9. As the relief that Oxford seeks in this action—namely, a declaration that it properly terminated coverage under the Plan effective January 1, 2015—would not be useful in resolving Defendants' anticipated claims of fraud and fraudulent inducement against Oxford, the Court would still decline to exercise jurisdiction over Plaintiff's claim pursuant to the DJA.[5]

Based upon the foregoing, the DJA does not provide an independent basis for jurisdiction over Plaintiff's claims, and Defendants' motion to dismiss is granted.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss is granted. The Clerk of Court is instructed to close this case.

**SO ORDERED.**

---

5. Plaintiff's argument that "an exercise of discretionary jurisdiction by this Court over Oxford's request for declaratory judgment will avoid multiplicity of actions" in light of "the pre-existing 2014 Benefits Lawsuit already before this Court," *see* Pl.'s Opp'n at 15, is moot, as the Court granted in part and denied in part Oxford's motion for summary judgment on January 5, 2017, thereby resolving the 2014 Benefits Lawsuit. *See Franzese v. United Health Care/Oxford*, No. 14–CV–1902, 232 F.Supp.3d 267, 2017 WL 1325368 (E.D.N.Y. Jan. 5, 2017), DE [51].